HOXIE VS. PRICE and wife.

*Husband and wife, dealings between. Fraudulent conveyances, action to set aside. Bona fide purchaser.*

1. A wife, having a separate estate, may deal with her husband, may loan him money and take a transfer of property from him in payment thereof, and may buy property of him, where the transaction is fair and honest and not in fraud of creditors.

2. On account of the great facilities for fraud, however, growing out of the relation of husband and wife, transactions of this character will be closely scrutinized.

3. Upon the evidence in this case, deeds of lands from defendants to a third person, and from him back to the wife, and a patent of other land to the wife, are regarded as fraudulent and void as to the husband's creditors.

4. After an execution sale of the lands under a judgment against the husband rendered *subsequently* to said patent and deeds, a purchaser from the wife, for value, without notice or knowledge of the defect in her title, by putting his deed first on record, will be protected (under the recording act) against such execution sale, although the certificate of such sale was duly filed in the register's office.

5. The purchaser at such execution sale, therefore, *before he becomes entitled to the sheriff's deed*, may maintain a suit to set aside the patent and deeds under which the wife claims, and to restrain her from conveying or incumbering the land. *Avery v. Judd*, 21 Wis., 262, and *Phelan v. Boylan*, 25 id., 679, approved and followed.

APPEAL from the Circuit Court for *Outagamie* County.

Action to set aside, as being fraudulent as against the creditors of *Samuel Price*, a certain conveyance of lands made by said *Price* and his wife, *Jane E. Price*, to one J. House, on the 2d of December, 1867, and a reconveyance thereof by said House to said *Jane E. Price* on the 6th of December, 1867; also, a patent issued by the state to said *Jane E. Price*, on the 2d of May, 1868, on a certificate of purchase previously held by her husband. The plaintiff claims to have purchased said lands, and a certain other forty-acre tract held by *Price* in his own name, at a sale by the sheriff of Outagamie county, on an execution issued upon a judgment recovered in Waupaca

county in 1869, and docketed in Outagamie county January 7, 1870, in favor of one Reynolds against *Samuel Price*, one Ketchum, and the plaintiff herein, upon a note executed by them jointly in September, 1867. The plaintiff alleges that said note was made for the accommodation of said *Price*, and signed by the others for his benefit and without consideration; which the defendants deny.

At the trial, defendants' objection to the admission of any testimony under the complaint, on the ground that it did not state facts sufficient to constitute a cause of action, was overruled. Plaintiff then introduced the record of the judgment under which *Price's* lands were sold, and the sheriff's certificate of sale, dated March 5, 1870; also proof of the issuing of a patent to *Jane E. Price* of part of those lands, on a certificate of purchase which had been assigned to her by her husband; and testimony tending to show that the note on which said judgment was obtained was signed by the plaintiff and Ketchum for the accommodation of *Samuel Price;* and that *Price* had acknowledged that he put his property out of his hands for the purpose of avoiding payment thereof. The defendant *Samuel Price* testified in his own behalf, to the effect that the note given to Reynolds was for the accommodation of Ketchum, who was owing him, and was to pay it; that when he married his wife, in 1865, she had $1,500 of her own, and that he sold his land to her in 1866 for a full price paid by her in money, and gave her a deed of it, but, she having been told that such deed was not good, it was destroyed and another given through House; and that he had in like manner transferred to her the certificate on which the patent was issued; and that she had bought other property and paid for it out of her own funds. The defendant *Jane E. Price* also testified to the same effect, and stated the sources from which she received the funds.

Plaintiff then introduced proof tending to contradict the testimony and impeach the veracity of *Samuel Price*, and also to

show that *Mrs. Price's* former husband was poor while living, and left her but little property.

The court found all the allegations of the complaint well and sufficiently proven, and that the defense had not been sufficiently established, the testimony on the part of the defendants being unsatisfactory in itself and contradicted by the evidence for the plaintiff; and it rendered judgment for the plaintiff, setting aside the deeds and patent, and forever restraining the defendant *Jane E. Price* from selling, encumbering, or setting up any title to the lands described therein. From this judgment the defendants appealed.

*Warner & Ryan*, for appellants, contended that this was an action to remove a cloud from the title, and in order to maintain it the plaintiff must be in possession and have the *legal title* (R. S., ch. 141, sec. 29; *Jones v. Collins*, 16 Wis., 594; *Stridde v. Saroni*, 21 id., 173; *Gamble v. Loup*, 14 id., 465; *Meade v. Black*, 22 id., 241); and that plaintiff could have no title until after the expiration of 27 months from the time of sale. 2. That there was no necessity for bringing such action, because the land might be redeemed; and the duplicate certificate required to be filed with the register of deeds would be at least constructive notice to purchasers. *Bull v. Bell*, 4 Wis., 54; *Parker v. Kane*, id., 1; *Jarvis v. Dutcher*, 16 id., 307. 3. That this could not be in the nature of a creditor's suit under ch. 303, Laws of 1860, because the creditor only can maintain such action, and this plaintiff was a codefendant and not the creditor in the former action. The plaintiff in a creditor's suit must show that he has recovered a judgment at law, and is unable to obtain satisfaction by execution. *Goss v. Lester*, 1 Wis., 43; *Williams v. Sexton*, 19 id., 42. 4. That the sheriff's certificate was improperly admitted in evidence, because it was made by the sheriff of Outagamie county, in the circuit court for Waupaca county, and was not stamped nor sealed, and did not state when it was executed. 5. That the findings of fact

were not sustained by the evidence. The first deed to *Jane E. Price* was good, and the second is merely an addition to or continuance thereof. *Hannan v. Oxley*, 23 Wis., 519. The debt to Reynolds was subsequently contracted. The fact that a conveyance is from husband to wife is not evidence of fraud, under our statutes for the protection of married women. *Norval v. Rice*, 2 Wis., 22; *Pike v. Miles*, 23 id., 164; *Boos v. Gomber*, id., 284. Since the act of 1850, husband and wife can bargain, sell and trade in reference to her separate property, as other parties do, and their trades will be sustained. *Beard v. Dedolph*, 29 Wis., 136. Part of the land conveyed was *Price's* homestead, and not subject to the judgment, and its conveyance was therefore no fraud. *Mrs. Price*, having purchased in good faith, is not bound nor affected by the admissions of her husband. If she received the deed simply as security, she is entitled to the first lien.

*G. B. Myers*, for respondent:

The testimony in respect to the property held by *Mrs. Price* at the time of her second marriage is inconsistent and improbable, and is contradicted by the facts proved in relation to her previous circumstances, and also by her own admissions. 2. The objection to *Hoxie's* right to prosecute an action in equity, that he has an adequate remedy at law, by ejectment, after he receives his deed, cannot avail here because not taken by answer; nor could it avail in any case, because a purchaser at sheriff's sale has a right to maintain an action in equity to set aside prior fraudulent conveyances of the property. *Hildreth v. Sands*, 14 Johns., 493; and 2 Johns. Ch., 35; *Mohawk Bank v. Atwater*, 2 Paige, 54. A creditor, who has a judgment lien upon land which has been fraudulently conveyed, may maintain such an action. *Chautauque Co. Bank v. White*, 2 Seld., 237; *McElwain v. Willis*, 9 Wend., 561; *Crippen v. Hudson*, 3 Kern., 161; *Beck v. Burdett*, 1 Paige, 305; *Gates v. Boomer*, 17 Wis., 455; *Cornell v. Radway*, 22 id., 261; *Clarkson v. DePeyster*, 3 Paige, 320; *Falconer v. Freeman*, 4 Sandf., 565; 1 Paige, 384; *Boyd v. Dunlap*, 1

Johns. 478; *Reade v. Livingstone,* 3 Johns. Ch., 481; 2id., 54; *King v. Wilcox,* 11 Paige, 589; *Child v. Brace,* 4 id., 309.   The purchaser at an execution sale has a specific lien, and may maintain an action to restrain waste.   Equity will also relieve him against fraudulent sales.   In equity suits to remove clouds upon titles, plaintiffs are not bound to show clear titles.   *Craft v. Merrill,* 14 N. Y., 456; *Lounsbury v. Purdy,* 18 N. Y., 515.   3. This is not a creditor's suit properly so called, but one in which the common law powers of the court are invoked to aid a sale on execution.

Cole, J.   We have but little doubt about the facts of this case.   The evidence, we think, fully supports the conclusion reached by the court below, that the conveyances mentioned in the record from the defendants, *Price and wife,* to House, and by the latter to *Mrs. Price,* and also the patent from the state to *Mrs. Price* of the forty-acre tract on section twenty-two, were fraudulent and void as to the creditors of *Price.*   It is true that *Price and wife* both testify that these lands were purchased by *Mrs. Price,* and paid for out of her separate estate, long before the note to Reynolds was given.   But *Price* is most successfully impeached, and his testimony is entitled to no credit whatever. And *Mrs. Price* gives a most unsatisfactory account of the way she acquired so much property as to be able to pay for the Payton farm, and also these lands conveyed to her by her husband, out of her separate estate.   This court has held that, where the wife has a separate estate, she may deal with her husband; may loan him money and take a transfer of property from him in payment thereof; and she doubtless might buy property of him, where the transaction is fair and honest, and where it appears that the husband does not convey it to her merely for the purpose of covering it up and placing it beyond the reach of his creditors.   But, on account of the great facilities which the marriage relation affords for the commission of fraud, these transactions between husband and wife should be

Hoxie vs. Price and wife.

closely examined and scrutinized, to see that they are fair and honest, and not mere contrivances resorted to for the purpose of placing the husband's property beyond the reach of his creditors. (See *Beard v. Dedolph*, 29 Wis., 136.) This is obviously the only safe rule to be adopted, when we come to examine these business transactions and transfers of property from the husband to the wife.

Now it appears that, when *Mrs. Price's* first husband enlisted in the army, they were quite poor and destitute. He lived on forty acres of land in a small log house ; had only three or four acres improved ; owned a cow ; and often worked out to get means to support his family. He was in the army only about six months, when he died. About a year after his death, she married the defendant *Price*. At this time, she would have us believe that she had not only supported herself and child, but had accumulated and realized from the sale of the forty-acre tract, her husband's back pay, bounty money, her pension, etc., a sum sufficient to enable her to buy and pay for a hundred and sixty acres of land which she obtained through the conveyance from her husband, and also the Payton farm, for which she paid $1,200 in 1868. The statement seems to us improbable. We do not believe that she purchased and paid for these lands, conveyed to her by House, out of her separate estate. In the language of the court below, the testimony on the part of the defendants is so unsatisfactory in itself, and is so far contradicted by the evidence of the plaintiff, that we have no hesitation in concluding that these conveyances and the patent were means really resorted to for the purpose of placing the property of the defendant *Samuel Price* beyond the reach of his creditors, and that *Mrs. Price* never purchased and paid for these lands out of her separate estate. And therefore, assuming, as we think we must do upon the evidence, that these conveyances are fraudulent and void as to the creditors of *Price*, the question then arises, whether the plaintiff can maintain this action to set them aside. To my mind this is the only point of difficulty in the case.

The plaintiff is the purchaser at the sheriff's sale and the holder of the certificate, but will not be entitled to a deed until twenty-seven months from the 5th of March, 1870. And, this being his relation to the property, the question is presented, whether he can maintain a suit to set aside the patent and deeds made thus for a fraudulent purpose, and to enjoin *Mrs. Price* from conveying it away or in any manner encumbering the real estate so as to endanger his rights. We are inclined to the opinion that he can.

It is, however, claimed by the counsel for defendants, that the action is prematurely brought; that the plaintiff is not entitled to the aid of a court of equity to remove these fraudulent conveyances, but that he should wait until he procures the sheriff's deed, and then bring his action of ejectment to recover the property. This might be an adequate remedy, provided *Mrs. Price* continued to hold the title. But suppose in the meantime she should convey the land to an innocent purchaser, for a valuable consideration, who has no notice of the fraudulent character of these conveyances. Would not the plaintiff then be remediless, and lose the benefit of his lien? It appears to us that he would. It is quite true that it appears from the evidence that the sheriff's certificate has been placed on file in the register's office of the proper county. But the judgment in favor of Reynolds and against Price *et al.*, upon which the execution issued, was obtained long subsequent to the conveyances sought to be set aside. A purchaser, therefore, from *Mrs. Price* would not be affected with notice by the record of the existence of this certificate, it being subsequent in date to the conveyances from *Price* and wife to House, and from the latter to his grantor; and, if he should record his deed before the conveyance from the sheriff to the plaintiff was placed upon record, he would, within the doctrine of even the New York later decisions, hold the estate. *Ely v. Wilcox*, 20 Wis., 524, and authorities cited in the opinion of Mr. Justice DOWNER. Consequently, in the event of a sale and convey-

ance by *Mrs. Price* before the plaintiff obtained his deed from the sheriff, the lien created by the execution sale would be destroyed. For it must be borne in mind that the judgment against Price *et al.* was not docketed in the office of the clerk of the circuit court of Outagamie county, so as to become a lien upon these lands, until the 7th of January, 1870, while the sheriff's certificate was not filed in the register's office until the 15th of March of that year. But the deed from *Price and wife* to House was executed and duly recorded on the 6th of December, 1867, and that from House to *Mrs. Price* was made and recorded on the 12th of June, 1868. So that a purchaser from *Mrs. Price*, without actual notice of the defect in her title, who should record his deed before the sheriff's deed was placed upon record, would hold the estate as against the plaintiff. See *Wood v. Chapin*, 13 N. Y., 509. And this being so, it seems to us the plaintiff is entitled to an injunction restraining *Mrs. Price* from disposing of the property, and to have these fraudulent conveyances canceled upon the record. Otherwise his rights, as we have already said, may be lost or destroyed by a conveyance from *Mrs. Price* to an innocent purchaser for a valuable consideration. The case would therefore seem to come under the familiar head of equity, where the court exerts its jurisdiction to restrain the fraudulent acts of a party, which threaten to endanger a security, and to restrain sales which would be inequitable and operate as a fraud upon one who has acquired a lien upon the property. This doctrine is recognized in the cases of *Avery v. Judd*, 21 Wis., 262, and *Phelan v. Boylan*, 25 id., 679, as well as by some of the authorities cited on the brief of the counsel for the plaintiff in the present case.

For these reasons we think the judgment of the circuit court is correct, and must be affirmed.

*By the Court.*— Judgment affirmed.