MARY E. HILL *vs.* ISAAC HILL.

*When Claim of a Widow against the Estate of her deceased Husband will not be allowed—Relation of Debtor and Creditor between Husband and Wife; how established.*

A claim by a widow against the estate of her deceased husband for money which she alleged she lent to him during coverture, will not, in the absence of proof of an express promise or agreement on his part to repay it, be allowed.

To establish the relation of debtor and creditor between a husband and wife, growing out of the use or appropriation by the husband of the wife's money, being her separate estate, where the *receipt and appropriation are with her knowledge and acquiescence*, there must be an agreement on his part to repay it.

APPEAL from the Orphans' Court of Cecil County.

The case is stated in the opinion of the Court.

The cause was submitted on briefs to BARTOL, C. J., STEWART, BOWIE, GRASON, MILLER and ROBINSON, J.

*Wm. J. Jones*, for the appellant.

*Wm. S. Evans*, for the appellee.

BARTOL, C. J., delivered the opinion of the Court.

The real estate of Stephen A. Hill, deceased, was sold under a decree passed by the Orphans' Court of Cecil County, under the Acts of 1865, ch. 162, and 1866, ch. 81, for the payment of his debts.

Among the claims filed, was that of the appellant, his widow; being an account charging for cash lent by her to her husband, during the coverture, "for the purpose of purchasing land from Silas Low, and for materials for

building the house thereon," and which is stated in the account to be money she received from C. B. Cutler, her guardian."

Exceptions to the allowance of the account were filed by the appellee, a creditor of the deceased; and upon proof being taken, the claim was disallowed. We think the decision of the Orphans'. Court was correct, the evidence being in our opinion, altogether insufficient to establish the claim. It does not appear when the parties were married, nor at what time the appellant became entitled to the money, which she alleges was loaned to her husband; we are left to infer, that she held it as her separate property, under Art. 45, secs. 1 and 2, of the Code. There is no proof whatever, that it was loaned to her husband upon any contract or promise on his part to repay it. The witness Cutler states that he was her guardian, and had in his hands $412.96, belonging to her, of this sum he paid her $200 in the spring of 1866, and shortly thereafter, $100 more; and on the 23rd day of June, 1866, the balance, $119, was paid to her husband. The presumption is, that this payment was made with the knowledge and acquiescence of the appellant, nothing appearing to the contrary; and a release was executed by her to the guardian. The witness further states, that at the time the balance of the money, $119, was paid to Stephen, he said " he wanted the money to pay for a lot of ground he had bought," and further said, " he had sold or could sell his horse, and with that money, and other money he could get, would pay for that lot of ground," and told witness, " he intended to deed the property to his wife, and asked witness if he would take the deed down to Elkton to have it recorded."

The witness *Warner*, states that the deceased told him he had over $400 of his wife's which he was going to pay for the piece of land, and had some hundred dollars to put into the house, after paying for the land.

On cross-examination, the witness stated the conversation of which he had spoken, took place in 1867, about six or eight months before Stephen's death. There is no evidence showing when the land was purchased.

*Mrs. McMinemee*, the mother of the appellant, stated that "Stephen got her money, Mr. Cutler was her guardian, the last payment of her money Mr. Cutler made to Stephen, he put it into the land, together with what he borrowed from her. He said he allowed to draw the deed in her name." This is the whole of the testimony offered by the appellant. The inference we draw from it is, that the money coming to the appellant from her guardian; or some part of it; for the amount does not definitely appear, was received by her husband from her, or with her consent, and used in the purchase of land, upon some sort of understanding or purpose on his part, that the title to the property should be vested in her; but the nature of this understanding, if any such existed, is not shown by the proof; and not being evidenced by writing could not operate to create any interest in the land, or charge it with a trust in her favor. *Hollida vs. Shoop*, 4 *Md.*, 465; *Wolf vs. Corby*, 30 *Md.*, 356.

We do not understand the appellant's counsel as contending that she has any equity in the land, or any charge upon it. She claims to be entitled to the money as creditor; but in order to establish the relation of debtor and creditor between a husband and wife, growing out of the use or appropriation by the husband of the wife's money, being her separate estate, *where the receipt and appropriation are with her knowledge and acquiescence;* there must be an agreement by the husband to repay the money. *Edelen vs. Edelen*, 11 *Md.*, 415, 420. It was said in that case, quoting from 1 *Madd. Ch.*, 586, that "when a wife has the absolute disposal of the money, though she appropriate it to the use of the husband, his assets are not bound." In such case an assumpsit is not implied;

but an express promise or agreement to repay the money must be shown. In *Barton vs. Barton*, 32 *Md.*, 214, the suit of the widow against the executors of her husband, was maintained upon proof of an express agreement made by him to repay the money loaned. In this case, no such promise or agreement has been proved.

*Order affirmed.*

(Decided 25th June, 1873.)