Pillow v. Sentelle.

2. SAME:
Credit by mistake.

## PILLOW v. SENTELLE.

1. MORTGAGE: *Foreclosure against heirs.*

   In an action to foreclose a mortgage, to which the widow, administrator and heirs of the mortgagor were parties, the court rendered judgment against the defendants for the mortgage debt. *Held:* This was error as the defendants were not personally liable for the debt.

2. SAME: *Same: Burden of proof as to debt.*

   A note for $5000 and a mortgage to secure it, were executed at the same time, and being read together, show that the mortgagee agreed to advance the mortgagor $5000, by paying his sight drafts to that amount. In an action by the mortgagee to foreclose the mortgage, the guardian *ad litem* for the minor heirs of the mortgagor, filed an answer denying the material allegations of the complaint. *Held:* That the burden of proof was on the plaintiffs to show that they advanced the money according to their agreement, or a part thereof, before they were entitled to a decree of foreclosure; and the note, if read as evidence, would not prove the mortgagor's indebtedness.

3. PRACTICE: *Cross-complaint : Service on defendants.*

Where a defendant files a cross-complaint against the plaintiff and his co-defendants, it is error to dispose of the same until all the defendants thereto who do not appear, have been warned or summoned to answer it. But it is not necessary to have service on the plaintiff in the original action.

4. SAME: *Cross-complaint against minors : Service, etc.*

A guardian *ad litem* appointed for infant defendants after service of process on them, appeared and answered the cross-complaint of another defendant to the original complaint. *Held :* That the guardian *ad litem* having appeared and answered, it was not necessary that the minors should be served in the cross-action ; nor that their guardian should be served.

5. MORTGAGE: *Securing note subsequently executed.*

In a mortgage given to the plaintiffs, to secure the amount of advances agreed to be made by them, it was expressly stated that as the mortgagor might need additional credits, any notes given for these to other parties, to the amount of $3000, should form a part of the consideration of the mortgage and be secured by it. *Held :* That notes to the amount of $3000, when executed according to the terms of the mortgage, were secured by it, equally and to the same extent as the original debt.

6. HUSBAND AND WIFE: *Loan to husband from separate estate.*

At common law, contracts between husband and wife are void ; but equity will enforce a promise made by a husband to his wife to repay her a *bona fide* loan out of her own separate estate.

APPEAL from *Lee* Circuit Court in Chancery.

M. T. SANDERS, Judge.

*James P. Clarke* for appellant.

1. The court below found that Mrs. Pillow's debt was valid, and that she had the right to have the same included in the security of the mortgage, and satisfied out of the proceeds of sale of the land. And Sentelle not appealing, the decree will not be disturbed as to that point. *24 Ark., 30; 44 id., 25; 37 id., 405.* But the court erred in postponing the payment of her debt, until Sentelle & Co. were paid in full. The court certaintly overlooked the provisions of the mortgage, that the

$3000 notes should "*stand upon the same footing*," etc., and that in foreclosing said mortgage, "*the holders of the paper due to others provided for above*," etc., notice should be given, etc. If entitled to participate at all, Mrs. Pillow was entitled to come in on equal footing with Sentelle, and be entitled to her *pro rata*.

*O. P. Lyles* for appellant.

The mortgage on its face provides for Mrs. Pillow's debt as fully as it does for Sentelle's. Why should she be postponed? The mortgaged property ought to pay the debts *pro rata*, and Sentelle & Co. having purchased the land at the sale under the decree of foreclosure, they must pay Mrs. Pillow's *pro rata* out of the purchase price. *Mansf. Dig., sec. 1317*.

*H. N. Hutton* for appellee.

Appellant is not a beneficiary under the mortgage. Contends, after reviewing the provisions of the mortgage, that Mrs. Pillow does not bring herself within its terms. She does not show that she made advances in money to be used in the planting interests of Pillow on the plantations mentioned in the mortgage, but it is shown that the notes were given for other indebtedness not contemplated by the mortgage, for rents collected by Pillow for her, and for price of her lands sold.

BATTLE, J. On the 17th of January, 1876, Gideon J. Pillow mortgaged certain lands in Lee county, in this State, to George W. Sentelle & Co. After styling Pillow the party of the first part, and Sentelle & Co. the parties of the second part, the deed of mortgage recites the consideration and purposes thereof, as follows: "That, whereas, the party of the second part are factors and commission merchants, of the city

of New Orleans, and have undertaken and agreed, as such merchants and factors, to advance to the said party of the first part, to enable him t ) run and operate his two plantations situated in Lee county, Arkansas, known as his Mound Place and his Brown Place, for the present year, the sum of $5000 in cash, to be advanced by paying the sight or time drafts of the party of the first part, to that amount, and the party of the first part has executed and delivered to the party of the second part his note of hand, payable to his own order and by him indorsed, and bearing date this day, for $5531.68, which embraces 8 per cent interest per annum, by agreement of the parties hereto, it being the conventional rate of interest allowed by the laws of Louisiana, with reference to which laws this contract is made, the proceeds of which note being $5000, this day is placed to the credit of the party of the first part and is subject to his check, and which sum is to bear interest in the hands of the said party of the second part until it is withdrawn. And, whereas, it is contemplated that, by agreement between the parties, further advances may be made during the season, it is agreed between the parties hereto, that this mortgage shall cover any additional advances which may be made by the party of the second part to the party of the first part. It is also contemplated that this arrangement may extend beyond the present year's operations. In view of which it is agreed that this mortgage shall be and constitute a continuing security to the party of the second part, so long as the relations hereby created shall exist, and that the security shall last so as to protect the party of the second part against loss arising from said relations, and shall be bound for any balance of any season, if there should be such, which may be due the party of the second part.   *      *      *

" It is contemplated that said party may need for this year's operations other and further credits than the sum agreed to be advanced above by the party of the second part, and in

view of this want it is agreed that this mortgage shall cover any additional notes which the party of the first part may make to the amount of $3000, but no more, the evidence of which fact, that such notes are to be secured by this mortgage, shall be the recital on the face of the note or notes of that fact; and said notes when so executed shall be as good and valid as a part of the consideration of this mortgage as if they were particularly described and set out in this mortgage, and shall stand upon the same footing as the consideration already above set out.     *     *     *

" It is further agreed and stipulated, that should it at any time become necessary to foreclose this mortgage by the said party of the first part failing to reimburse the party of the second part, and the holders of the paper due to others provided for above by the said party of the first part, that the said party of the second part shall give the party of the first part ninety days' written notice and shall advertise the same in some newspaper printed in the city of New Orleans, unless the party of the first part shall waive said advertisement, after which the party of the second part may proceed to sell said mortgaged premises to the highest bidder for cash, or on such terms as they may think proper, and shall convey the same to the purchaser without reservation, and that said deed shall be absolute and pass the fee in said premises."

And then, for the consideration and purposes recited, and subject to the trusts and conditions stated, it conveyed the land to Sentelle & Co.

Pillow having died, Sentelle & Co. instituted this action against his administratrix, widow and heirs to foreclose the mortgage. A part of the heirs were non-residents, and others were minors. The non-residents were served with notice by publication of a warning order; and a guardian *ad litem* was appointed for the minors, who accepted the appointment and filed an answer to the complaint, denying all allegations therein

prejudicial to the minor defendants. The widow, Mary E. Pillow, answered, and filed a cross-complaint, in which she, in effect, alleges that she loaned to Pillow the sum of $3000 and took his three promissory notes therefor, on the faith of the mortgage executed to Sentelle & Co., and pursuant to the terms thereof; insists that she holds a lien on the lands mortgaged by virtue of the mortgage to secure the payment of her notes ; and asks that in the foreclosure of the mortgage, she be allowed to share ratably with Sentelle & Co. the proceeds of the sale of the land. She made the plaintiffs and her co-defendants in the original complaint defendants to her cross-bill, but it does not appear that they were ever summoned or warned to answer the same. The guardian *ad litem* appeared and answered, denying all the allegations contained in the cross-bill. Sentelle & Co. answered, denying that she was secured by the mortgage, and alleging that the mortgage was intended to secure them and no others. The other defendants did not appear.

The mortgage and the notes held by Mrs. Pillow were filed as exhibits. The note executed to Sentelle & Co., according to the record here, was not filed or introduced in evidence. The depositions of Mrs. Pillow were taken and filed, in which she testified, in substance, that she and Pillow were husband and wife ; that before their marriage they entered into a marriage contract, by which it was agreed that she should have and retain all the property owned by her at the time of their marriage as her own separate estate, free from the control and liabilities of her husband ; that, after Pillow went into bankruptcy, Sentelle & Co. refused to honor his drafts, and Pillow endeavored to raise money to carry on his business, and failed ; and failing she loaned him out of her own separate estate the $3000, for which the three notes held by her were given. In support of her deposition she filed her marriage contract. These exhibits filed and the depositions of Mrs. Pillow and her marriage contract were all the evidence introduced on the

hearing, so far as shown by the record. Upon this evidence and the pleadings the cause was submitted ; and the court rendered judgment against the defendants to the original complaint in favor of Sentelle & Co. for $5255.33 for their debt, and for $3293.22 damages, and ordered that the land be sold and that the proceeds of the sale thereof be appropriated, first, to the payment of the costs of executing the decree, then to the satisfaction of the judgment recovered by Sentelle & Co., and that the residue then remaining, if any, be appropriated to the payment of the three notes held by Mrs. Pillow. The defendants in the original complaint appealed.

1. MORTGAGE:
Foreclosure against heirs.

The Circuit Court erred in rendering judgment against the defendants, as they were not personally liable for the indebtedness sued on.

2. SAME:
Same: Burden of proof as to debt.

Under the pleadings it was necessary for the appellees to have proved the indebtedness for the satisfaction of which they seek to foreclose the mortgage, or a part thereof. Every material allegation in their complaint was put in issue by the answer of the guardian *ad litem.* The mortgage and the note of Pillow to appellees which it was given to secure, being executed at the same time, were parts of the same contract. Read together, they show that appellees undertook and agreed to advance to Pillow $5000 by paying the sight and time drafts of Pillow to be drawn on them to that amount, and that Pillow undertook to repay to them the amount which should be so advanced and interest thereon, and to secure the payment thereof executed the mortgage. This being true the note, if it had been filed or read as in evidence, would not have proved any indebtedness of Pillow, because the advances for which it was given were to be made after it was executed. The burden of proof, therefore, rested on appellees to show they advanced the money, according to their agreement, or a part thereof, before they were entitled to a decree of foreclosure. The mortgage only secured them in the payment of the debt Pillow

Pillow v. Sentelle.

owed them for moneys actually advanced and interest thereon.

The Circuit Court also erred in disposing of the cross-complaint before the defendants therein were warned or summoned to answer the same. As said in *Ringo v. Woodruff, 43 Ark., 497,* parties defendant are as necessary to cross-complaints as to original complaints. Unless they voluntarily appear it is as necessary to have service of process on them, actually or constructively, in one case as in the other. But it is not necessary to have service on the defendant who is the plaintiff in the original action. *Mansf. Dig., sec. 5023; Ringo v. Woodruff, supra; Peak v. Percifull, 3 Bush., 218; Newman Pleading & Practice, 626; Bliss on Code Pleading, sec. 390.*

3. PRACTICE: Cross-complaint: Service on defendants.

The guardian *ad litem* having appeared and answered the cross-complaint it was not necessary that the minor defendants should have been served with process. They had been served for the purpose of causing them to appear in court. That having been done the court was authorized to appoint the guardian *ad litem* who, having accepted the appointment, thereupon became such guardian for the purpose of defending them in the original suit and cross-action growing out of and forming part of it. It would be a useless formality to bring them again into court, by process, for the purpose of reappointing the person already appointed, or appointing another person guardian *ad litem* to defend for them against the cross-complaint, when they already had such guardian and the court had authority to remove him and appoint another in his stead, whenever the interests of the infants required such change. Neither was it necessary that their guardian should be served with process, he having appeared and answered.

4. SAME: Cross-complaint against minors: Service, etc.

Inasmuch as this cause will be remanded we will notice questions presenting themselves in the record here, which will be necessary for the court below to consider and decide when the cause shall come before it again for hearing. It is insisted by appellees that the mortgage was not intended to and does

5. MORTGAGE: Securing note subsequently executed.

not secure any person other than themselves; and that all the advances mentioned or referred to in the mortgage were to be made by them. But this contention is not sustained by the facts. It is expressly stated in the mortgage that Pillow might need other and further credits than the sum agreed to be advanced by Sentelle & Co.; and in view of that fact it was agreed that the mortgage should cover any additional notes which Pillow might make to the amount of $3000, and that the evidence of the fact that such notes were secured by the mortgage should be its recital on the face of the notes; and that such notes when so executed should be as good and valid as a part of the consideration of the mortgage as they would be had they been particularly described therein, and should stand upon the same footing as the indebtedness to Sentelle & Co. secured by the mortgage; and that in the event it should become necessary to foreclose the mortgage on account of Pillow failing to reimburse Sentelle & Co., "*and the holders of the paper due to others*" provided for in the mortgage, a certain notice should be given by Sentelle & Co. before they sold the land. According to the terms of the mortgage Pillow was authorized to borrow, on the faith of the mortgage, $3000 in addition to that Sentelle & Co. agreed to loan, in the event he concluded he needed it in the cultivation of his farms in 1876; and such notes when executed according to the terms of the mortgage were to be equally and to the same extent secured by the mortgage as the debt of Pillow to Sentelle & Co.

6. HUSBAND AND WIFE: Loan to husband from separate estate.

A question arises as to the validity of the notes of Pillow to his wife. Are they valid? At common law contracts between husband and wife are void. But in equity a promise by the husband to his wife to repay her a loan *bona fide* made by her to him out of her own separate estate, upon his promise to repay, is obligatory, and can be enforced. *Wallingsford v. Allen, 10 Peters, 592; Medsker v. Bonebrake, 108 U. S., 73; 2 Story Eq. Jur., secs. 1372–3; Jaycox v. Caldwell, 51 N. Y., 395;*

*Whitford v. Daggett, 84 Ill., 144; Moyer's Appeal, 77 Penn. St., 482; Drury v. Briscoe, 42 Md., 154; Hill v. Hill, 38 Md., 183; Hoxie v. Price, 31 Wis., 82; Bryant v. Bryant, 3 Bush., 155; Hon v. Hon, 70 Ind., 135; McCampbell v. McCampbell, 2 Lea (Tenn.), 661; Schouler on Husband & Wife, sec. 395; Towers v. Hagner, 3 Wharton, 48; Johnston v. Johnston, 1 Grant (Penn.), 468; Kut's Appeal, 40 Penn. St., 90; Grabill v. Moyer, 45 Penn. St., 530; Babcock v. Eckler, 24 N. Y., 623; Savage v. O'Neill, 44 N. Y., 298; Steadman v. Wilbur, 7 R. I., 481; in re Blandin, 1 Lowell, 543.*

The decree of the court below is reversed and this cause is remanded for proceedings not inconsistent with this opinion.