16

Paul L. HODGE *v*. Wilburn M. BRIGGS, Rea
BRITTON, L. Gene WORSHAM and SPRING LAKE
SHORES, INC.

CA 82-108 & CA 82-109                    643 S.W.2d 576

Court of Appeals of Arkansas
Opinion delivered December 15, 1982

*Thomas G. Montgomery,* for appellant.

*Cynthia S. Moody,* for appellee Briggs.

*Friday, Eldredge & Clark,* for appellee Britton.

GEORGE K. CRACRAFT, Judge. On October 31, 1979 Wilburn M. Briggs commenced an action to foreclose two real estate mortgages which were then in default. The first of these mortgages was executed by L. Gene Worsham on April 5, 1976 to secure an indebtedness of $125,000 evidenced by a note payable to Capitol City Savings & Loan Association and subsequently assigned to Briggs. He further alleged that he was the holder of a separate note for $150,000 executed by Worsham on April 28, 1977, which was also secured by a mortgage on the same property. The appellant Paul L. Hodge was named as a defendant on allegations that "he may claim an interest by virtue of a second mortgage on the property" executed by Worsham on the 20th day of September, 1976 to secure an indebtedness owed to Hodge in the sum of $10,000. The only relief prayed against Hodge was that the two mortgages held by Briggs be declared to be superior to that of Hodge.

Rea Britton was also named a defendant on allegations that she too "may claim" an interest as assignee of a mortgage and notes on that property dated April 4, 1977. It was alleged that Britton's mortgage was void and, in any

event, was inferior to those of Briggs. There were other parties to the suit against whom relief was sought. These parties and issues are not involved in this appeal, which is narrowed solely to the issues of the priorities as to the mortgages of Briggs, Hodge and Britton.

Britton filed an answer denying all allegations of the complaint and counterclaimed against Briggs asserting that her lien was a valid one and was superior to Briggs'. Britton cross-complained against all other co-defendants except Hodge.

Although Hodge was properly served with a copy of the Briggs complaint, he was not named as a cross-defendant or served with a copy of the answer and counterclaim filed by Britton. Hodge did not appear and filed no responsive pleading in the case.

On August 27, 1981 the court, reciting that Hodge was in default, entered a foreclosure decree "as a part of an agreement between Briggs and Britton." This decree ordered foreclosure, declared that Briggs had a first lien by virtue of his two mortgages, found that Britton's lien was subordinate only to that of Briggs, and that the lien of Hodge was subordinate to both liens. Appellant had notice neither of the filing of the answer, counterclaim and cross-complaint nor the entry of the judgment until after the decree had been entered. On September 4, 1981 he filed a timely motion to set aside the decree on the grounds that he had not been made a party or served with notice of Britton's answer, counterclaim and cross-complaint and that any interest claimed by Britton was in fact subordinate to his own. The court denied this motion and a timely notice of appeal was filed in that case.

On that same day the appellant brought a separate action to foreclose his second mortgage asserting that only the mortgage executed by Worsham to Capitol City Savings and Loan Association (held by Briggs under an assignment) was superior to his. Worsham did not answer. Briggs and Britton moved to dismiss as to them asserting that the question of priority of this lien had been fully adjudicated in the decree in cause No. E-79-581. The court entered a

personal judgment by default against Worsham in favor of Hodge in the amount of the debt but granted the motions of Briggs and Britton, holding that the priority of their liens had been fully adjudicated in the prior decree. Appellant also appeals from that order and both appeals were consolidated in this court.

In the complaint Briggs alleged that he was the holder of the notes secured by the two mortgages on the property. One mortgage dated April 5, 1976 had been assigned to him by Capitol City Savings & Loan. He also alleged that he was holder of a note in the amount of $150,000 executed by Worsham secured by a mortgage on the same property dated the 28th of April, 1977. Even though the appellant's mortgage was prior in time to the second of the Briggs mortgages, the complaint alleged that it was inferior to Briggs' lien. The only relief prayed for against the appellant was that the two Briggs mortgages be declared superior to that of the appellant. The appellant filed no responsive pleading controverting the superiority of the Briggs mortgage which had been filed for record subsequent to his own.

Rule 55, Arkansas Rules of Civil Procedure, provides that where a party against whom a judgment for affirmative relief is sought has failed to appear or otherwise defend as provided by the rules, judgment by default will be entered by the court. The relief sought by Briggs against the appellant was a declaration that the liens of both Briggs' mortgages were superior to that of the appellant, notwithstanding that only one of Briggs' notes was superior in time. When Briggs asserted that the appellant claimed an interest in the land but that it was inferior to his liens, the appellant was required to plead and prove whatever interest he had which he might claim to be superior to that of the appellee. Having failed to do so, he is in no position now to claim a superior lien. *Bank of Commerce* v. *Ryan,* 152 Or. 614, 52 P.2d 1139 (1936); Rule 55 (c), Arkansas Rules of Civil Procedure. There is nothing in the record showing excusable neglect, unavoidable casualty or any other just cause for setting the decree aside. We find no error in the court's refusal to set aside that part of the decree which declared appellant's lien to be inferior to both of those of Briggs or in holding that

appellant was estopped by the prior decree to raise that question in the separate action brought by him.

Appellant next contends that the chancellor erred in both deciding the issue of priority of liens between Hodge and Britton in the first action and in holding that determination to be a binding adjudication of the issue between them in the second case. We agree that the pleadings in the original suit did not raise that issue for the court's determination.

Britton's pleading was two-pronged. It was an answer to the allegations made by Briggs against her in his complaint and a counterclaim against Briggs and a cross-complaint against other co-defendants seeking affirmative relief against them. Hodge was not named a party in the cross-complaint, and no relief was prayed against him. He was not served with a copy of the pleading.

An answer to a complaint is responsive only to the allegations of the plaintiff and cannot raise justiciable issues as to other co-defendants. In order to properly seek affirmative relief from a co-defendant it is necessary to cross-complain against him stating the facts on which the relief is sought and to serve him with it. *Marr* v. *Lewis,* 31 Ark. 203 (1877); *Ringo* v. *Woodruff,* 43 Ark. 469 (1884); *Pillow* v. *Sentelle,* 49 Ark. 430, 5 S.W. 783 (1887); *Reynolds* v. *Jones,* 63 Ark. 259, 38 S.W. 151 (1896); *Luttrell* v. *Reynolds,* 63 Ark. 254, 37 S.W. 1051 (1896); *Miller* v. *Mattison,* 105 Ark. 201, 150 S.W. 710 (1912); *Fox* v. *Pinson,* 182 Ark. 936, 34 S.W.2d 459 (1930).

In *Ringo* the court stated:

But neither of them made his answer a cross-complaint. Failing to do this, there was lacking the pleading which was necessary to authorize the court below to grant them such relief. For in asking this relief they seek to go beyond the inquiry proposed by the complaint, and ask for relief against co-defendants which is dependent on facts of which no statement is made in plaintiff's complaint and are not involved in the

determination of the relief plaintiff is entitled to, or in the determination of the questions presented by the allegations of his complaint, and are not responsive to the allegations of the complaint, and cannot be set up in opposition to the relief prayed for by plaintiff. *To obtain this relief insisted on by defendants, as stated, it was necessary for them to have stated the facts upon which they demanded it, and asked for it, in an answer made a cross-complaint against the co-defendants against whom the relief was sought. It was not sufficient to state the facts and ask for the relief in the answer,* but the answer should have been made a cross-complaint against the co-defendants who would have been affected by the relief if it had been granted. . . . *Unless he be made a party defendant in the answer in the nature of a cross-complaint in the manner indicated, the co-defendant is not required to answer the allegations constituting the grounds of relief asked for against him; and as corollary to this it follows, no proof is required to disprove the allegations on which this relief is asked.* (Emphasis supplied)

Here Britton did not assert her priority as against Hodge in a cross-complaint; she counterclaimed only against Briggs on this issue. Even if she had cross-complained against Hodge it would be necessary for her to have served the cross-complaint in accordance with Rule 5, Arkansas Rules of Civil Procedure.

It was argued in conference that as Hodge was in default as to the Briggs complaint, Rule 5 did not require service of the Britton cross-complaint upon him because that pleading did not "assert new or additional claims for relief" against him. It was argued that as a party to the action Hodge was required to take notice of this pleading and was therefore on notice that Britton was raising the issue of priority in her cross-complaint against the other co-defendants. This is expressly contrary to the rulings in *Ringo* v. *Woodruff, supra; Pillow* v. *Sentelle, supra;* and *Miller* v. *Mattison, supra.*

It was contended in conference that *Schulte* v. *Walthour*, 239 Ark. 627, 393 S.W.2d 242 (1965) supports that position. *Schulte* quotes at length, and relies entirely on, the Court's prior decision in *Board of Directors St. Francis Levee Dist.* v. *Raney*, 190 Ark. 75, 76 S.W.2d 311 (1934). Both cases are clearly distinguishable from the matter now under review and, in fact, recite the distinction we make. Both cases involved petitions to intervene; neither involved a cross-complaint against co-defendants. In both cases the court points out that interventions, unlike cross actions, are not independent actions but merely ancillary proceedings and supplemental to the main case.[1] In holding that where there is an *intervention* the original parties must take note of subsequent pleadings, the court in *Raney* made it clear that this had no effect on its declarations with respect to *cross-actions* in *Ringo, Pillow* and *Miller* in the following language:

> Section 1204, Crawford & Moses' Digest, cited to support the contention that there must be process issued and served against the cross-defendant, has no application to proceedings by intervention. That section refers to a defendant already in court, and allows him to file a cross-complaint against persons other than the plaintiff where he has a cause of action affecting the subject-matter of the suit against a co-defendant or a person not a party to the action.
>
> In a suit where there is an intervention, the original parties are already in court, and must take notice of all subsequent proceedings in that action relating to the subject-matter of the suit. This includes intervening petitions. *The cases of Ringo v. Woodruff, 43 Ark. 496; Pillow v. Sentelle, 49 Ark. 430, 5 S.W. 783; and Miller v. Mattison, 105 Ark. 201, 150 S.W. 710, are not in conflict with the principle announced.* These cases hold that, where a cross-complaint is filed, process must issue and be served on the cross-defendant, but in all these cases the one made cross-defendant was

---

[1]Under Rule 24 (c), Arkansas Rules of Civil Procedure, interventions are now subject to the service provisions of Rule 5, just as are cross-complaints.

a co-defendant with the one filing the cross-complaint, and therefore that procedure is governed by § 1204, *supra.* (Emphasis supplied)

We conclude that the chancellor erred in not setting aside that portion of the decree which adjudicated matters not properly before it and in dismissing appellant's separate action seeking to put that issue before the court.

The cause is affirmed in part and reversed and remanded in part for further proceedings not inconsistent with this opinion on the issue of the priority of appellant's lien as to Britton and their respective rights to participate in any surplus resulting from the foreclosure sale ordered by the court.

Affirmed in part and reversed and remanded in part.

GLAZE, J., dissents.

TOM GLAZE, Judge, dissenting. I believe the case law in *Schulte* v. *Walthour,* 239 Ark. 627, 393 S.W.2d 242 (1965), and *Fox* v. *Pinson,* 182 Ark. 936, 34 S.W.2d 459 (1930), requires this case to be affirmed.[1] Before discussing the rules of law found in *Schulte* and *Pinson,* a brief analysis of the facts in the instant case is necessary. The facts are not complicated and sequentially, the relevant facts are as follows:

1. *Briggs filed a mortgage foreclosure action and obtained valid service on* Worsham, Britton, Harris, Standley, Spring Lake Shores, Inc., and *Hodge.* Hodge was named because he might claim an interest in the subject property by virtue of a second mortgage. Briggs prayed, among other things, that his interests in the property be declared superior to all of the named defendants' interests.

---

[1] The Arkansas Rules of Civil Procedure were adopted effective July 1, 1979. Rules 5 (a) and 24 may well affect the prior Supreme Court holding in *Schulte* v. *Walthour* and *Fox* v. *Pinson.* These Rules were not argued before the trial court nor were they argued in this appeal.

2. Britton was the only party who filed an answer to the Briggs complaint. *Hodge* and the others *defaulted.*

3. *Britton* also *filed a counterclaim against Briggs and a cross-complaint against Worsham and Spring Lake Shores, Inc. (Spring Lake).* Britton's counterclaim and cross-complaint were based on a note, mortgage and assignment which had been recited in Briggs' foreclosure complaint as being the basis upon which Britton might claim an interest in the subject property. In her actions, Britton sought judgment against Briggs, Worsham and Spring Lake and that the judgment be held to constitute a first and prior lien on the property. *Hodge was never served a copy of Britton's counterclaim or cross-complaint.*

4. The court subsequently entered its decree finding all parties had been duly served with process and that Briggs and Britton were the only ones to appear for the hearing. It found that Standley and Harris had no interest or lien in the property and that if Hodge had any interest, it was by virtue of a mortgage which was subordinate to the liens of Briggs and Britton.

5. Hodge filed a motion to set aside the court's decree. This occurred eight days after the decree was entered and nearly two years after the Briggs foreclosure suit was filed and served on Hodge.

The factual issue is simple: Whether Britton was required to serve Hodge with a copy of her counterclaim and cross-complaint in the pending Briggs foreclosure suit even though (1) Hodge already had been made a party to the original foreclosure action, (2) Britton's cause of action in her counterclaim and cross-complaint recited the claim upon which Britton might assert an interest in the property and which, in fact, did serve as the basis of Britton's cause of action alleged in her counterclaim and cross-complaint. I believe service of the cross-complaint on Hodge was not necessary and that my position on this point is supported by the rules announced in *Schulte* v. *Walthour, supra,* and *Fox* v. *Pinson, supra.*

Procedurally, *Schulte* involved a complaint-in-intervention rather than a cross-complaint. Otherwise, the issue considered by the Supreme Court is strikingly similar to the one posed in the instant case. In *Schulte,* Holmes, a contractor, commenced building homes on properties owned by his wife. Walthour held four mortgages on the properties. Holmes became unable to complete the work, and Walthour foreclosed against the Holmeses. Walthour also named Big Rock Stone and Robinson Lumber Company as material lien holders. Schulte, a painting contractor who did work on the homes, was not made a party-defendant by Walthour. However, Schulte later intervened, seeking judgment for his services. He acquired service on Walthour but *not* on the Holmeses. Their summons was returned *non est.* The trial court held Schulte did not acquire a lien against the subject property because his complaint-in-intervention had not been served on the Holmeses. The principal question on appeal was whether Schulte, an intervening party, was required to obtain service on the Holmeses before he could claim a lien against the property. The Supreme Court reversed the trial court, holding that the Holmeses were parties to the litigation, and they were required to take notice of all subsequent proceedings relating to the pending litigation. The Supreme Court's decision in part was based on the fact that Walthour's original action essayed, *inter alia,* to establish priority of liens between himself, as mortgage holder, and the lien holders, Big Rock and Robinson Lumber Company. Accordingly, the court held it was entirely in order for the trial court to permit Schulte to intervene, since the same property was involved and his claim presented the same legal question. The court stated:

"Appellant complains that the judgment by default was rendered without summons having been issued on the intervention or served on it, and it had no notice that the intervention had been filed. This would be of no avail to the appellant. An intervention is not an independent proceeding where it is against the plaintiff in the original action, but is ancillary and supplemental to the main case. *In a suit where there is an intervention, the original parties are already in the*

> *court and must take notice of all subsequent proceedings relating to the subject-matter, including intervening petitions."* (Emphasis supplied).

*Schulte* v. *Walthour,* 239 Ark. at 631, 393 S.W.2d at 244 (quoting *Arkansas Bond Co.* v. *Harton,* 191 Ark. 665, 67 S.W.2d 52 [1935]).

The reasoning and logic employed by the Supreme Court in *Schulte* should be recognized in the instant case. The original action filed by Briggs involved the same property. Additionally, the claims and issues raised by Britton in her counterclaim and cross-complaint are consistent with and based upon the same allegations as set forth in Briggs' foreclosure complaint. From the time the original action was filed, the common issue for all the parties involved the establishment of priority of liens. Once Hodge knew his lien interests in the subject property were involved in the foreclosure action, he had a duty to exercise due diligence in following all subsequent proceedings in the suit which might affect his interests.

Before leaving this point, I address the majority's attempt to distinguish *Schulte* v. *Walthour.* In sum, the majority contends that interventions, unlike cross-actions, are not independent actions but merely ancillary proceedings. Thus, while the original parties must take notice of subsequent pleadings when an intervention is filed, this rule is inapposite in cases in which cross-actions are filed. This simply is not true, and the case of *Fox* v. *Pinson,* 182 Ark. 936, 34 S.W.2d 459 (1930) — cited by the majority — contradicts its position on this point. The Court in *Pinson* stated the general rule that cross-complaints are in the nature of independent suits, and parties defendant are required to be served in cross-complaints as in original complaints. However, the Court stated further that there is a distinction between cross-complaints that are merely defensive and those that seek affirmative relief. It concluded:

> If Mrs. Fox had merely made allegations in her cross-complaint which would entitle her to damages by way

of defense to the foreclosure suit, this would not have made her cross-complaint an independent action.

As I have already stated, Britton's cross-complaint alleged nothing new; she sought damages and entitlement to a lien which were by way of a defense to Briggs' foreclosure action. If Britton had asserted a new, independent cause, the ruling case law would have required such cross-complaint to have been served upon Hodge. That was not the situation here.

In conclusion, Hodge argues that he possesses a valid second mortgage which, he admits, is inferior to that held by Briggs. He claims, however, that his mortgage has priority over Britton's mortgage which was recorded after Hodge's. Contrary to Hodge's contention, no evidence was presented to the trial court that Hodge held a valid, enforceable note and second mortgage. The only reference to Hodge's possible interest is reflected in the Briggs complaint which alleged that Hodge "may claim an interest in said lands by virtue of a second mortgage...." The court decreed that the mortgage lien of Hodge, *if any,* was subordinate and inferior to the liens of Briggs and Britton. Hodge defaulted after being duly served, he presented no evidence and he is now too late to assert a defense he should have interposed over two years ago.

Hodge was subject to the personal jurisdiction of the trial court, and the court was fully authorized to determine the priority of the various parties' interests. I believe the trial court was correct in denying Hodge's motion to set aside the court's decree. He simply sat on his rights and should not be heard to complain at this late date.