## LEDBETTER v. MANDELL.

(Supreme Court, Appellate Division, First Department. March 20, 1908.)

1. JUDGMENT—ENTRY, RECORD, AND DOCKETING—ERRONEOUS ENTRY.
     An erroneous entry on a calendar of the word "dismissed," not made in the presence of the court, and not in consequence of its order, is not to be taken as a final judgment dismissing the action.

2. SAME.
     Under Mansf. Dig. Ark. § 3948 [Ind. T. Ann. St. 1899, §§ 2628, 2630, 2632], providing that the clerk shall keep among the records of the court a book to be called the judgment book, and sections 3950 and 3952, requiring all judgments and decrees to be entered by him in the judgment book, an entry on the calendar of the word "dismissed" is not evidence that a judgment was actually entered dismissing the action.

3. COURTS—AMENDMENT OF CALENDAR.
     A court may cure an erroneous entry of its clerk on its calendar, and, having done so, the erroneous entry is as if it had never been made.

4. JUDGMENT—FINAL JUDGMENT—WHAT CONSTITUTES.
     Creditors filed a bill against their debtor and his assignee for the benefit of creditors, alleging that to sell the assigned property under the assignment as required by law would sacrifice the same, and prayed that the assignee be restrained from so selling under the assignment, and that he be appointed receiver to manage and dispose of the assigned property. *Held*, that an order granting the prayer and appointing assignee receiver was not a final order terminating the suit, so as to oust the court of jurisdiction to thereafter entertain a cross-bill by the receiver against a complainant creditor.

5. EQUITY—PLEADING—CROSS-BILL.
     A cross-complaint or cross-bill is not unknown to equity practice in Arkansas.

6. SAME—NECESSITY OF SERVICE ON PLAINTIFF.

In Arkansas on a cross-complaint or cross-bill, it is not necessary to have service on the defendant, who is plaintiff in the original action.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, § 294.]

7. JUDGMENT—COLLATERAL ATTACK—WANT OF JURISDICTION—EFFECT OF DECISION BY COURT AS TO ITS OWN JURISDICTION.

Whether a cross-bill was germane to the issues raised by the original bill, whether it was proper to set forth in the cross-bill facts which had matured after the commencement of the original action, and whether it was a good cross-bill under the laws of the jurisdiction where filed, are all questions which the court must have passed on in rendering judgment on the cross-bill, and cannot be collaterally brought in issue in a suit on the judgment.

8. SAME—FINAL JUDGMENT.

An order directing a receiver, appointed on complaint in equity by creditors, to disburse among the creditors all funds in his hands, but which did not purport to be a final order winding up the estate and discharging the receiver, but, on the contrary, sent his accounts to a master in chancery for report as to their correctness, and, where it appears that subsequent proceedings were had, a petition for the allowance of claims was filed against which objections were made, such order was not a final order terminating the suit so as to oust the court of jurisdiction to thereafter entertain a cross-bill by the receiver against a complainant creditor.

Appeal from Trial Term.

Action on a judgment by Walter A. Ledbetter, as receiver of H. Munzesheimer and Samuel Daube, copartners, against Kaufman Mandell. Judgment for defendant, and plaintiff appeals. Reversed, and a new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Gould & Wilkie (Learned Hand, of counsel), for appellant.
Bandler & Haas (David Bandler, of counsel), for respondent.

CLARKE, J. On December 8, 1906, there was filed in the clerk's office of the United States Court for the Southern District of the Indian Territory a complaint in equity by the H. B. Claflin Company, K. Mandell & Co., and certain other persons plaintiffs against H. Munzesheimer and Sam Daube and W. A. Ledbetter, defendants. That bill alleged that in November, 1896, the defendants Munzesheimer and Daube executed a deed of assignment under the laws of the state of Arkansas in force and operation in the Indian Territory, in which deed the plaintiffs herein were named as creditors, and are all preferred creditors, to a large amount. The plaintiff then set forth the nature of the stock and property conveyed by said deed of assignment, and alleged that the defendant Ledbetter, acting as assignee under the trust conferred upon him, took the inventory of said property, and filed his bond and oath, thereby qualifying as assignee; "that, by the terms of the law under which said Ledbetter acts as assignee, he is not permitted to sell the said property at retail, nor to keep the store open for the collection of debts or for the supplying of customers who are already indebted to the estate with other goods, nor is he permitted to sell at private sale any of the real estate or other property of said estate, nor is he permitted to replenish the stock of goods nor to sell at either pub-

lic or private sale the notes and accounts, but he is required to sell within 120 days, and after advertising for 30 days the real and personal property belonging to the said estate, and to sell only for cash." The bill goes on to set up the facts by reason of which plaintiffs allege that to sell the goods as required by law within 120 days and at public outcry would be in effect to sacrifice and destroy the same to creditors and thereby prevent the payment of debts, and alleges:

"That, unless the said Ledbetter is restrained from selling under the laws of Arkansas, as an assignee of said estate, he will sell the property as required by law, which will result as heretofore alleged."

It further alleges that Munzesheimer and Daube are insolvent, and "that it is for the best interest of all creditors of said estate preferred in said deed of assignment that the said Ledbetter should be, by order of this court, relieved of the requirement and necessity of acting under the said deed of assignment in the sale of said property, and should be restrained from selling said property as such assignee, and the said Ledbetter, who is a lawyer actively engaged in the practice of his profession, but knows nothing of the mercantile business, together with an experienced merchant, who thoroughly understands the details of such business, should in the judgment of creditors be appointed joint receivers for all the property of said estate * * * that may have passed by virtue of the deed of assignment." Wherefore plaintiffs prayed "for the restraining order herein suggested and for an order appointing two joint receivers of said estate, requiring of them sufficient bond to protect the rights of all parties, and to render said estate safe, also giving to them broad and comprehensive power in the management and control of the property of said estate and in the protection of the same, with such restrictions and requirements as the court may see proper to require, but, in any event, relieving the said Ledbetter of his duties and responsibilities as assignee under the deed of assignment requiring the proceeds to be paid as named in said instrument, except when otherwise ordered by this court," and "for such other relief, general and special, as may be necessary in the premises." Munzesheimer and Daube and Ledbetter, assignee of said firm, interposed an answer, waived the issuance of service, entered their appearance, and admitted the allegations of the bill. Thereupon the court made an order on the 8th of December, 1896, filed on the 9th, "that the said W. A. Ledbetter, as assignee, is hereby enjoined and restrained from selling any of the property conveyed to him under and by virtue of said deed of assignment as herein provided, and said W. A. Ledbetter is hereby appointed receiver to take possession of, manage, control, and dispose of all of said property conveyed to him, as such assignee, and he is appointed co-receiver to act in connection with the said W. A. Ledbetter in accordance with the provisions of this order as hereinafter set forth." It was further provided that, upon the execution and filing of the oath and bond required by law in the sum of $50,000, "the title to all the lands, tenements, goods, chattels, funds, assets, moneys, credits, choses in action, rights, and interests of every kind, name, and nature, either in law or equity, or any part thereof belonging to same as conveyed in said deed of assignment, shall be vested in said Ledbetter, and he

shall take possession of said property, and shall from thenceforward until further orders of this court, or the judge thereof, have full possession, custody, and control thereof, and shall be vested with the title so far as it shall be necessary to collect the debts and preserve the assets and the property for the benefit of creditors named in said deed of assignment." There were directions as to what he should do in managing and disposing of the estate for the best prices he could obtain. It was further ordered:

"That the proceeds realized from the sale of any of said property and from the collections on notes and accounts and other evidences of debt shall be placed to the credit of Ledbetter, receiver, and shall be subject only to his check."

The first object of the suit had been accomplished upon the entry of this order. Ledbetter, as assignee, had been disposed of. The duties and obligations imposed upon him by law as assignee which in the view of the plaintiffs would have been disastrous to their interests had been wiped out. Instead of the estate being wound up under the assignment law of the state of Arkansas which by the acts of Congress (Act May 2, 1890, c. 182, § 31, 26 Stat. 94) had been extended to the Indian Territory, it was to be administered by a receiver appointed by the court. By the acts of the plaintiffs the estate had been brought into court, there to be administered and distributed.

On the 24th of February, 1897, an order was entered, which provided that:

"It having been made to appear to the court that W. A. Ledbetter, receiver, has sold and disposed of all the property and effects in his hands as such receiver belonging to the estate of Munzesheimer and Daube, and that he has now in his hands funds which ought to be distributed among the creditors of the estate, * * * the said W. A. Ledbetter, as such receiver, is hereby ordered and directed to file in this court a full and complete report and statement exhibiting his dealings with said estate, showing the amount of money received by him and the disbursements made by him. And W. H. L. Campbell, the master in chancery of this court, is hereby ordered and directed to examine said report of said W. A. Ledbetter, receiver, and report to this court as soon as practicable his conclusion as to whether or not said report is in all things correct. Said W. A. Ledbetter, as such receiver, is hereby ordered and directed to disburse among the creditors of said estate all funds in his hands as such receiver, according to the terms of the deed of assignment executed to him by Munzesheimer and Daube on the 9th day of November, 1896, but the said * * * receiver is hereby ordered and directed to reserve sufficient funds in his hands to pay the commission to which he is entitled, and all other expenses and disbursements incurred in the management and control of said estate as assignee and receiver."

After the entry of this order, the docket shows the following entries: On the 10th of March, 1897: "Petition for allowance of certain claims filed." On the 30th of April, 1897: "Protest against same filed." On the 3d of February, 1899: "Dismissed." Thereafter, on July 31, 1899, Ledbetter, as receiver, filed what is denominated his "cross-complaint" against K. Mandell & Co., plaintiffs in the original equity suit, and on the 5th of September, 1899, filed his first amended cross-bill in lieu of his first cross-bill, in which he sets up the proceedings had, the order made, and, the receipt by him, in compliance with the order of the court, of the property which realized

about $48,000, which paid said creditors, after deducting expenses, about 65 cents on the dollar; that in order to obtain the appointment of the said receiver, said K. Mandell & Co. represented in their petition that said firm of Munzesheimer & Daube were indebted to them in about the sum of $7,500, and that they were sureties upon the notes of said firm in the sum of $3,515.26 to Sinzheimer, Levenson & Co.; that they had been compelled to take up and pay off said notes, and were entitled to receive the dividends due to the said Sinzheimer, Levenson & Co. under the said deed of assignment; that, in order to obtain the payment of said indebtedness, the said K. Mandell & Co. made affidavit proving said claim against the estate; that they averred in said affidavit that they did not hold any collateral or other security, and that by means of said affidavit, and believing the same to be true, the petitioner was induced to pay K. Mandell & Co. the sum of $6,609; that, in truth and in fact, K. Mandell & Co. did hold at the time of making said affidavit and said deed of assignment and at all times since, up to, and including the time of the payment of said indebtedness collateral security in the form of notes given to Munzesheimer & Daube by solvent people, which collateral pledged to the said K. Mandell & Co. exceeded in actual cash value $16,736.71; that since the time of the execution of said affidavit by K. Mandell he has collected a large amount upon the aforesaid collateral, the exact amount of which the petitioner is unable to state, and the said K. Mandell is hereby notified to make and file in this cause a full and complete statement thereof showing the amount collected and uncollected; that, in addition to the above security, K. Mandell & Co. holds as collateral for said indebtedness mortgages upon certain real estate situated in the city of New York, and the said Mandell & Co. are notified to produce said mortgages on the hearing of this cause. He is also notified to produce any and all other securities held by him to protect him against liability from said Munzesheimer & Daube, as well as to secure him in the payment of all sums due him from said Munzesheimer & Daube. The said K. Mandell is hereby notified to produce upon the trial a full and accurate statement showing all his accounts and transactions with the said Munzesheimer & Daube, or either of them, at the time of the execution of the assignment aforesaid at the time of the execution of the affidavit by K. Mandell as aforesaid, and at the time of the trial of this cause. The petition further alleged that said K. Mandell & Co. were entitled to collect nothing from the petitioner at the time the dividends were paid to them; that at the time he was informed of and discovered the falsity of the affidavit aforesaid, and the facts set forth, to wit, on the 1st day of June, 1899, the petitioner had in his hands the money due the said K. Mandell & Co. in about the sum of $1,755, and that a knowledge of these facts had also come to some of the creditors of the said Munzesheimer & Daube, who were entitled to participate in the dividends arising from the funds in the hands of the petitioner, as receiver, and the petitioner was required and notified by said creditors not to pay to said Mandell & Co. any of the funds held by him and belonging to said K. Mandell, and was, furthermore, required by said

creditors to appropriate the said funds to the reimbursement, in so far as the same would go, of the dividends paid by the petitioner to said Mandell & Co. on account of their claims against the funds and property in the hands of the petitioner as receiver.

He further alleges that, by reason of the premises, he is entitled to have refunded to him by Mandell & Co. the money so collected by them from him, and to have the same restored to the trust fund in his hands, in order that the same may be appropriated, under the terms of the assignment and orders of the court, to the payment of the claims justly due to creditors of said Munzesheimer & Daube.  He further alleges that there is yet due to creditors preferred by the said assignment the sum of about $35,000, and that, with the exception of the funds held by Mandell & Co., there is practically nothing with which to pay them, the said Munzesheimer & Daube being wholly insolvent, and he asked judgment that he be permitted to appropriate the $1,750 in his possession belonging to K. Mandell & Co. in part satisfaction and reimbursement of said sum of $6,609 so wrongfully and fraudulently collected by Mandell, and have judgment for the money paid in order that he may restore the same to the trust funds in his hands, and pay it out legally to the persons entitled thereto under the orders of the court; that K. Mandell & Co. be required to discover to this court what other property and moneys or other things and choses in action he has in his possession and in his control belonging to said Munzesheimer .& Daube, and which, under the terms of the deed of assignment and the orders of this court appointing the petitioner receiver, pass to the petitioner in trust for distribution, and that the said Mandell & Co. be required to surrender up to the petitioner all such property.  On June 5, 1900, a judgment was entered as follows:

"And this cause came on to be heard on the amended cross-bill of W. A. Ledbetter, assignee and receiver of Munzesheimer & Daube, herein filed on the 5th of September, 1899, against K. Mandell, doing business under the trade name of H. Mandell & Co., one of the plaintiffs in this cause, and it appearing to the court that on the 3d day of February, 1899, the clerk of this court, through mistake and inadvertence and without any order of the court to that effect, but on account of a confusion of the number of this case with the numbers of a list of cases which had been ordered stricken from the docket, wrote opposite this case on the minutes of the court the word 'Dismissed,' it is ordered that the said entry be, and the same is hereby, annulled, held for naught, and expunged from the minutes of the court because of the facts aforesaid; and it appearing to the court that the said K. Mandell has been personally served with a copy of the original cross-bill of the said W. A. Ledbetter, and has had ample time and notice to appear and make answer unto the same and has failed to do so, the court is now here of the opinion that the material allegations of said cross-bill as amended should be, and the same hereby are, taken for confessed as against the said K. Mandell, and it is ordered and decreed that the said W. A. Ledbetter, receiver of the property and effects of the said Munzesheimer & Daube in the custody of the court, in this cause do have and recover of and from the said K. Mandell the sum of $7,792, which he will distribute and pay out to the parties entitled thereto under the orders of this court in this case."

It is upon said judgment that this suit is brought.  The complaint was dismissed upon the trial because it was conceded that the so-called cross-complaint was filed at a term subsequent to the date on

which the word "Dismissed" appeared on the docket; the ground being that the entry of that word upon the docket or calendar was equivalent to a final order dismissing the original action, and that, having been dismissed, it could not be revived by the subsequent filing of a cross-bill against one of the plaintiffs, and that plaintiff could not be again brought into the court in which he had originally brought himself without the issuance and service of process upon him. If that litigation had ceased, Mandell was out of court, and the judgment would have had no validity unless he had been personally served or voluntarily appeared. An erroneous entry upon a calendar of the word "Dismissed," not made in the presence of the court, and not in consequence of its order, is not to be taken as a final judgment dismissing the case. There is no evidence in this record to show that a judgment was actually entered dismissing the action. The entry upon the docket is no evidence of such a judgment.

In Baker v. Kingsland, 10 Paige, Ch. 366, proceedings were instituted by a creditor of a decedent to enforce the payment of his claim against the estate. The indebtedness was denied by the executors. The only evidence which the creditor produced before the surrogate to prove the existence of his debt was a copy from the Supreme Court clerk's office of the docket of a judgment against the executor of the decedent. Upon appeal the court said:

"If the judgment against the personal representatives of the decedent had been even prima facie proof of the original indebtedness, the copy of the docket of the judgment in the Supreme Court was not legal evidence that any such judgment had been recovered. Since the act of 1840 took effect, no docket of a judgment subsequently recovered in the Supreme Court is valid for any purpose, unless it is entered in the county clerk's office. And the copy of the docket never was legal evidence to prove the existence of a judgment except in some special cases provided by statute. The record of the judgment, or a sworn or exemplified copy thereof, must be produced."

This case was cited and followed in Handly v. Greene, 15 Barb. 601.

In Schenectady, etc., v. Thatcher, 6 How. Prac. 226, the court said:

"The statute requires him [the clerk] 'immediately after entering the judgment' to proceed to make up the roll, and among the papers necessary to constitute a complete judgment roll is 'a copy of the judgment'; that is, a copy of the entry of the judgment made by the clerk in the judgment book. Such entry in the judgment book and copy in the roll is the only record evidence that judgment has been perfected."

In Forsyth v. Campbell, 15 Hun, 235, plaintiff attempted to prove the existence of a judgment by producing a certified copy of an order for judgment made by the court. Appellant argued that, since the statute required that the clerk should enter judgment upon such an order, it should be presumed that the clerk performed his duty, in the absence of evidence to the contrary. The court refused to adopt this suggestion, and held that there was not sufficient proof of the judgment. In the following cases it was held that no appeal could be taken from an order directing judgment until the judgment had been actually entered by the clerk: Knapp v. Roche, 82 N. Y. 366; Stevens v. Central Bank, 162 N. Y. 253, 56 N. E. 628. In Lentilhon v. City of New York, 3 Sandf. 721, it was held that an entry made by the

clerk by the direction of the court, on receiving a verdict, of the judgment to be rendered thereon, is not the judgment itself, and not until the clerk had entered the judgment in the judgment book was the judgment complete. The statutes of Arkansas contain provisions for the entry of a judgment in a judgment book which are similar to the requirements of our Code, and it would seem, therefore, that the rule established by the above decisions should apply. Mansfield's Dig. Ark. § 3948 [Ind. T. Ann. St. 1899, § 2628], provides:

"The clerk must keep among the records of the court a book to be called the 'judgment book,' and in entering judgments or decrees therein shall leave a space or margin on the record in which to enter a memorandum of the satisfaction or setting aside of any such judgment or decree."

Section 3950 [Ind. T. Ann. St. 1899, § 2630]:

"All judgments and decrees, whether rendered by the court or by confession, shall be entered by the clerk in the 'judgment book' in the order of their date."

Section 3952 [Ind. T. Ann. St. 1899, § 2632]:

"He shall, immediately after the rendition of any judgment or decree, enter the same in the judgment book, in which shall be alphabetically cross indexed all the judgments of the court, according to the surnames of the plaintiff and defendant. * * *"

Respondent cites two Massachusetts cases holding that a docket entry is sufficient evidence of a judgment. As under the practice in that commonwealth the docket entry seems to be final judgment, those cases do not affect the case as here presented. It cannot be that a court may not cure an error of its clerk. That having been done, the erroneous entry is as if it had never been made. It is claimed that the order of the court granting the prayer of the original bill of complaint and appointing Ledbetter receiver was the final order in the case, which, having been entered, ousted the court of jurisdiction over Mandell. I do not think so. The purpose of that proceeding was to bring this estate into court, to have it under the control of the court, to be disposed of by the court in the interests and for the benefit of the complainants and the other creditors. Having obtained that relief, the plaintiffs were still in court for the purpose of the administration of the estate, and were and continued to be parties, had rights in court, and duties to the court, and continued there so long as the estate was open and the receiver was acting under the order of the court which they had obtained.

Respondent contends that the cross-complaint was a document unknown and unauthorized under the laws of the state of Arkansas, and hence was a nullity at any stage of the proceedings. He refers to various sections of the Code of Arkansas bearing on the subject of pleadings, none of which provide for the service of a cross-complaint, and concludes from that fact that a cross-complaint is unauthorized. It seems to me that the following cases show that a cross-complaint or cross-bill is not unknown to equity practice in the state of Arkansas: Pillow v. Sentelle, 49 Ark. 430, 5 S. W. 783, was an action to foreclose a mortgage; the widow and heirs of the mortgagor being joined as defendants. To this action the widow answered and filed a cross-

complaint, in which she alleged that she held a lien on the mortgaged property by virtue of the mortgage to secure the payment of certain notes given by the mortgagee to her as security for a loan, and asking that in a foreclosure of the mortgage this lien of hers be satisfied. She made the plaintiff and her codefendants in the original complaint defendants to her cross-bill, but did not have new process served upon any of them. The court there held that, as the codefendants did not voluntarily appear, "it is as necessary to have service of process upon them actually or constructively in one case as in the other, but it is not necessary to have service on the defendant who is the plaintiff in the original action." In Horner v. Hanks, 22 Ark. 573, 579, the Supreme Court of that state, in discussing the subject of cross-bills, said:

"More often than otherwise a cross-bill is to obtain discovery from the plaintiff of facts contrary to or different from those stated in the bill, but concerning its matter, or to obtain a decree against the plaintiff in the original suit, and the authorities referred to this sort of cross-bill unless special mention is made of a cross-bill filed to obtain a decree against a codefendant. This latter sort of cross-bill is as well grounded in practice, although it partakes somewhat in the nature of an original bill against the codefendant; it being necessary to compel an answer from him by process, that not being necessary in this state as against the plaintiff in the original suit."

In Heer Dry Goods Co. v. Shaffer, 51 Ark. 368, 11 S. W. 517, plaintiff brought an action on a promissory note to which defendants answered and pleaded a set-off. The Supreme Court in that case stated that a set-off was in every respect essentially a cross-action brought by the defendants against the plaintiff, and that court further stated:

"It is not necessary to summon or warn a plaintiff in an action to answer a set-off pleaded by the defendant. There is no reason why he should be (summoned). The set-off is pleaded in answer to his complaint, and he is bound to take notice of it. A summons or warning order could answer no useful purpose. The statute, without requiring notice in any form to be given to him, says he must file his reply to the set-off on or before the calling of the cause for trial."

In Sandel's & H. Dig. Ark., section 5712 states:

"A defendant may file a cross-complaint against persons other than the plaintiff, and have proceedings thereon as follows."

Here follow provisions for service of process upon the codefendants. In a footnote to that section the compilers state:

"All of the defendants must be served or appear, but it is not necessary to have service on the plaintiff"—citing Pillow v. Sentelle, supra.

Respondent contends that the cross-complaint was not germane to the issues raised in the complaint, and therefore conferred no jurisdiction. Whether or not the cross-complaint was germane to the issues raised by the complaint was a question which was before the court in the Indian Territory when it had this cross-complaint under consideration, and was necessarily decided in the affirmative by that court when it rendered the judgment in question. That decision, whether in conformity to the laws of Arkansas or not, cannot be attacked collaterally, at least in the absence of contradiction by statutes or decisions. Laing v. Rigney, 160 U. S. 531, 6 Sup. Ct. 366, 40 L. Ed. 525, cited and followed Mutual Reserve Fund L. Ass'n v. Phelps, 190 U.

S. 147, 23 Sup. Ct. 707, 47 L. Ed. 987.  In the Laing Case a woman sued her husband for a divorce in New Jersey, alleging in her complaint that he had committed various acts of adultery in the state of New York.  Defendant appeared in the action, and filed an answer in which he denied the allegations of adultery in the complaint.  Subsequently plaintiff filed a supplemental bill of complaint, wherein she alleged that the defendant had committed adultery with a certain named person at various times since the commencement of the suit, and prayed for the same relief as that sought by the original petition.  Thereafter the court ordered that the supplemental complaint be served upon the defendant personally, and that defendant appear and answer the supplemental complaint.  This order was served upon the defendant in New York City.  Defendant did not appear or answer the supplemental complaint, and after a reference a decree was entered granting plaintiff a divorce and alimony.  Plaintiff afterwards brought an action in this state upon the decree of the New Jersey court to recover the amount awarded for alimony and costs.  The defendant alleged in his answer to this action that the New Jersey court obtained no jurisdiction to make any personal decree against him on the supplemental complaint.  On appeal to the United States Supreme Court it was held that, in the absence of any statute or reported decision to the contrary, it must find the law of New Jersey applicable to the case in the decree of the New Jersey court, and, if the New Jersey court had misinterpreted that law, defendant's only remedy was by appeal from that decision.  It seems to me that although as a matter of fact that defendant was actually served with and had notice of the filing of the supplemental complaint in that action, although the service was out of the state, yet that decision must control this case.  The court in this case considered that, having once obtained jurisdiction over the plaintiffs in this action, it had jurisdiction to render judgment upon the cross-bill without further service of process; and, there appearing to be no statutes or decisions to the contrary, and the decisions of the courts of Arkansas concurring, this court must presume that the court of the Indian Territory correctly interpreted the law of that territory.  Whether or not the cross-bill was germane to the issues raised by the complaint, whether or not it was proper to set forth in that bill facts which had matured after the commencement of the original action, and whether or not it was a good cross-bill under the laws of Arkansas, were all facts which that court must have passed upon in arriving at the judgment in question, and they cannot be brought in issue collaterally in this proceeding.

The respondent further contends that the order by which Ledbetter was directed to disburse among the creditors of the estate all funds in his hands as receiver, according to the terms of the deed of assignment, was a final order ending the proceeding, and cites Smith v. Woolfolk, 115 U. S. 143, 5 Sup. Ct. 1177, 29 L. Ed. 357.  Upon careful reading it appears, however, that the proceedings there declared to be ineffectual because of nonservice of process were instituted by the filing of a petition after the court had distributed the proceeds of the sales of lands against which the original proceeding had been directed, had directed the receiver to collect the available assets of the estate, and

report to the next term of the court, the receiver had so reported, and an order had been made allowing him to retain the additional sum as his compensation, so, as the court said, "that nothing remained of the original cause in which Woolfolk and his wife were in any way concerned." It was under such circumstances that the court held:

"It follows that the record of the proceedings and decree of the circuit court of Chicot county subsequent to the decree made in the case of Craig v. Wright, Executrix, and Others, on October 28, 1868, was not binding upon Woolfolk and wife, and could not be received in evidence against them."

In the case at bar the order relied upon did not purport to be a final order winding up the estate and discharging the receiver. On the contrary, it sent his accounts to the master in chancery. It appears upon the docket that subsequent proceedings were had thereunder. A petition for the allowance of certain claims was filed, against which objections were filed. There was no finality.

It seems to me that Mandell, having sought the jurisdiction of the court, having appeared therein by attorney, having become a party plaintiff, and having succeeded in bringing the estate into court, was himself there and remained there for jurisdictional purposes until a final order was entered winding up and disposing of those proceedings, of which there is no trace in this record. The proceeding being still open, the estate being still in court, the receiver not having been discharged, and Mandell having received, as is alleged, a portion of that estate upon false representations, he must be considered still in court for the purpose of making restitution.

I conclude, therefore, that we are bound to give full faith and credit to the judgment of the United States Court for the Southern District of the Indian Territory here sued upon, that it was error to dismiss the complaint upon this record, and that the judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event. All concur.