LEDBETTER v. MANDELL.

(Supreme Court, Appellate Division, First Department. December 30, 1910.)

1. JUDGMENT (§ 490*)—COLLATERAL ATTACK—JURISDICTIONAL QUESTION—NECESSITY OF SERVICE OF PROCESS.

While the question whether a cross-bill is germane to the original bill is not jurisdictional, so that an error in deciding it can be corrected only on appeal, the question as to necessity of service of process on defendant in the cross-bill is jurisdictional.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 926–928; Dec. Dig. § 490.*]

2. EQUITY (§ 119*)—CROSS-BILL—NECESSITY OF SERVICE OF PROCESS.

M. and other creditors sued in the Indian Territory to enjoin L., the assignee for creditors of their debtor, from acting as assignee, on the ground that the law as to assignments would compel him to close out the estate at a sacrifice. Thereupon an interlocutory order, accomplishing the purpose of the suit, was entered, enjoining the assignee from acting as such, and appointing him receiver. As receiver he closed out the estate, and distributed the assets. Two years after the order of distribution, he, as receiver, filed in said suit a so-called cross-bill, asking for judgment against M. for the amount paid him on the distribution, on the ground of fraudulent concealment by M. of the fact that his claim was secured, and also for judgment that he might retain, and apply on the judgment, money then in his hands, collected by him as attorney for M., from outside sources. L.'s law partner, who had appeared for the plaintiffs in the original suit, filed a so-called "intervener," asking that he be protected from any claim which M. might make against him because of said money in the hands of him and L. Thereupon personal judgment was rendered against M. as prayed by L. *Held* that, under the law of the Indian Territory, the cross-bill was not a true cross-bill, which is merely defensive or intended to obtain full relief touching the matter in the original bill, but one introducing new matter, and in its nature an original bill, process on which, in the absence of appearance, must be served on the defendant therein, in order to give the court jurisdiction to render a personal judgment against him.

[Ed. Note.—For other cases, see Equity, Dec. Dig. § 119.*]

Ingraham, P. J., and McLaughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by Walter A. Ledbetter, as receiver of H. Munzesheimer and another, partners, against Kaufman Mandell. From a judgment on a verdict directed for defendant, plaintiff appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

Arthur F. Gotthold, for appellant.
Louis Marshall, for respondent.

MILLER, J.· On a former appeal in this case, a judgment entered upon a dismissal of the complaint at the close of the plaintiff's evidence was reversed (124 App. Div. 854, 109 N. Y. Supp. 602). The present appeal is from a judgment for the defendant entered upon a verdict directed by the court upon motions made by both parties at the close of the case.

The opinion of Mr. Justice Clarke on the prior appeal contains a complete and accurate statement of the proceedings in the United

States Court for the Southern District of the Indian Territory, resulting in the judgment in suit, and obviates the necessity of a restatement. One change in the record, however, with respect to those proceedings, needs to be noted. It now appears that, in addition to the entry of the word "dismissed" on February 3, 1899, upon the clerk's docket, a similar entry was made upon the judge's bench docket, and that in form at least a judgment of dismissal was entered in the judgment book. While that was called a "Court Journal," the evidence shows that it was the book regularly kept for the entry of judgments by the clerk. The evidence also shows how those entries came to be made, and justifies a finding that they were made pursuant to the direction of Bledsoe, the attorney for plaintiffs in that suit. Certain sections of Mansfield's Digest of the Statutes of Arkansas, which were not in evidence before, were put in evidence, among others, section 3910, which provides:

"The proceedings to correct misprisions of the clerk shall be by motion, upon reasonable notice to the adverse party, or his attorney in the action."

Section 5103, which was in evidence before, provides:

"The plaintiff may dismiss any action in vacation in the office of the clerk on the payment of all the costs that may have accrued therein. * * *"

It appears that said entry of dismissal was actually made in term time. If, however, it was made upon the direction of the plaintiffs' attorney, it was at most an irregularity, an error of the clerk in treating such direction as one made in vacation, and it would seem that it could only be corrected as provided by said section 3910. However, we prefer to put our decision of this appeal on another ground.

The important question in the case is whether this defendant was entitled to notice of the so-called "cross-complaint" or "cross-bill" of Ledbetter, as receiver, and, of course, that depends upon the law of the jurisdiction in which the judgment was rendered. On the former trial the plaintiff put in evidence the opinions in certain reported cases of the state of Arkansas, the quotations from which in the opinion of Mr. Justice Clarke certainly supported the conclusion that service of process was unnecessary to confer jurisdiction upon the court to render a personal judgment against this defendant on the cross-bill. In Pillow v. Sentelle, 49 Ark. 430, 5 S. W. 783, the plaintiff in the original action actually answered the "cross-bill," and the question was as to whether codefendants had to be warned or summoned to answer. In Hornor v. Hanks, 22 Ark. 573, all the defendants to the "cross-bill" answered, and the contention was simply that the "cross-bill" was not sufficiently connected with the subject-matter of the original bill. In Heer Dry Goods Company v. Shaffer, 51 Ark. 368, 11 S. W. 517, the action was upon a promissory note, and the defendant pleaded in his answer what the court held to be a statutory counterclaim or set-off, of which, of course, the plaintiff had to take notice. It will thus be seen that the only evidence of the law of the foreign jurisdiction, apart from the judgment itself, which this court had before it, consisted of dicta of judges in cases in which the point was not even remotely involved.

On the trial now being reviewed, it was stipulated that any Arkansas or Indian Territory case might be cited without printing it in the record. The defendant called an expert who testified that the so-called "cross-bill" or "cross-complaint" was in the nature of an original bill, and that, in the absence of an appearance, service of process was necessary to confer jurisdiction on the court to render a personal judgment; and he supported that opinion by citation of authority, to which I shall presently refer.

It is, of course, conceded that the document, under which this plaintiff procured the judgment in suit, was not provided for by the statutes of the state of Arkansas. Vide Mansfield's Digest, § 5022 et seq. But it is claimed that the filing of a "cross-bill" was permissible under the equity practice in the state of Arkansas, and that is undoubtedly so. Much difficulty will be encountered in determining precisely what a "cross-bill" is. The tendency in the federal courts is to consider "true cross-bills" as defensive only in which new and distinct matter may not be embraced. Bowker v. United States, 186 U. S. 135, 22 Sup. Ct. 802, 46 L. Ed. 1090. But the extent to which matter not connected with the original cause of action may be brought in controversy by a "cross-bill" or "cross-complaint" appears to vary in different jurisdictions, and to be almost a matter of discretion. Wherefore the distinction between a "true cross-bill" and one in the nature of an "original bill" has often been overlooked with the result that there is much confusion in the decisions on the subject. The courts of Arkansas recognize the distinction between a "true cross-bill"; i. e., one which is merely defensive or intended to obtain full relief touching the matter in the original bill, and one which introduces new matter and is in its nature an original bill. Trapnall v. Hill, 31 Ark. 346.

While, of course, the question whether a "cross-bill" is germane to the original bill, is not jurisdictional and an error in deciding it can be corrected only on appeal, the question as to the necessity of service of process is jurisdictional. Upon that question we have the uncontradicted testimony of the expert, which is supported by a decision squarely in point. Lowenstein v. Glidewell, 5 Dill. 325, Fed. Cas. No. 8,575. In that case the plaintiff filed a bill to foreclose a deed of trust making one Partee and wife defendants. They answered, alleging that they were the owners in fee of the property and also filed a "cross-bill" praying for the cancellation of the plaintiffs' deed of trust. No process was issued thereon, and the question was whether the plaintiffs' could dismiss their bill, and whether the defendants were entitled to a decree pro confesso on their "cross-bill." It was held that the bill and "cross-bill" did not constitute one suit, and that a service of a subpœna on the defendants, in the "cross-bill" or their voluntary appearance was necessary. The opinion of Caldwell, J., in that case is a plain, concise, and logical statement of the law applicable to this question. He shows that service of some sort is necessary in every case, and points out the single case in which substituted service may be ordered by the court—i. e., when the "cross-bill" is wholly or partially defensive in character and where, because of the

nonresidence of the plaintiff or his departure from the jurisdiction, substituted service may be necessary to prevent a failure of justice.

Our attention has not been called to any case overruling that case or tending to weaken its authority.

In a nutshell the case is this: Merchants in New York send bills for collection to a firm of attorneys in the Indian Territory. The debtor makes a general assignment for the benefit of creditors to one of said attorneys. The other attorney brings an action on behalf of the creditors to enjoin his partner from acting as assignee on the ground that the law applicable to assignments will compel him to close out the estate at a sacrifice. The assignee and the debtors, the assignors, immediately file voluntary appearances and admit the allegations of the bill. Thereupon an order is made enjoining the assignee from acting as such and appointing him receiver. He closes out the estate and distributes the assets pursuant to the direction of the court. More than two years after the order for distribution he files with the clerk a so-called "cross-complaint," and later files what he denominates a "cross-bill," in which, as receiver, he asks for a judgment against his client for the amount paid his client on the distribution, on the ground of a fraudulent concealment by the latter of the fact that his claim was secured, and also that he may be permitted to retain the sum of $1,750, which he then has in his hands belonging to his client, collected from some outside source, and apply it on the judgment. His partner, who had appeared as attorney for the plaintiffs in the original suit, files a so-called "intervener," in which he asks that he be protected from any claim which his client may make against him because of the money in his hands. And thereupon a personal judgment is rendered against this defendant, who swears that he never heard of the "cross-bill" until long after the judgment was rendered.

The facts presented to the court on the former appeal brought the case within Laing v. Rigney, 160 U. S. 531, 16 Sup. Ct. 366, 40 L. Ed. 525. That case involved the jurisdiction of the Court of Chancery in New Jersey to render a decree of divorce on a supplemental bill which was not served within the state. The only evidence bearing on the question of the New Jersey law, aside from the decree itself, was the testimony of an expert not supported by any reference to statutes or decisions, and the court held that the decree itself, in the absence of any statute or decision of the court to the contrary, was the best evidence of the law of New Jersey. In that case the decree recited service without the state. In this case the judgment contains this recital:

"* * * And it appearing to the court that the said K. Mandell has been personally served with a copy of the original cross-bill of the said W. A. Ledbetter, and has had ample time and notice to appear and make answer unto the same, and has failed to do so. * * *"

The undisputed evidence now shows that recital to be false. Thus it appears that the plaintiff not only undertook to get a judgment against his client on allegations of fraud, without giving him a day in court, but actually imposed upon the court in order to accomplish his purpose.

It is unnecessary to determine what kind of a document the so-called "cross-bill" is. Of course, it had no relation whatever to any issue which might be presented by answer to the original bill. While doubtless the original suit was not terminated until a final judgment, the purpose of it was accomplished when the interlocutory order or decree was entered. It matters not whether that be called an order or a judgment. It granted the only relief prayed for. It is difficult to understand what reason the client of Messrs. Ledbetter & Bledsoe could have had for even suspecting that two years later a "cross-bill" might be filed, of which he would be bound to take notice. The "cross-bill" was manifestly an original bill, wholly unconnected with the subject-matter of the original bill and based upon matters arising subsequent thereto. It was filed by Ledbetter, receiver, who was not a party to the suit, but who in another capacity, i. e., as assignee, had been for more than two years in default.

Of course, in a sense, the proceeding instituted by Ledbetter, receiver, was connected with the administration of the estate, which had been brought into court on the defendant's motion, and I assume that it could have been instituted by petition; but it was a proceeding in personam, not in rem, and was as original in its nature as though it had been an action against a debtor to collect a claim owing the estate, and virtually that is what it was.

For the foregoing reasons and for those well stated by the learned trial justice, on granting the defendant's motion, I am of the opinion that the judgment is right and should be affirmed.

LAUGHLIN and DOWLING, JJ., concur.

INGRAHAM, P. J. (dissenting). Upon the former appeal from the judgment in favor of the plaintiff the nature of this action and the legal proceedings applied were examined and determined. 124 App. Div. 854, 109 N. Y. Supp. 602. I do not think that the record is substantially different from that presented upon the former appeal, and, if that appeal was correctly decided, it seems to me that the plaintiff was entitled to recover. The pleading presented to the United States Court of the Indian Territory upon which the judgment now sought to be enforced was entered has been treated as a cross-bill in equity, asking for new and affirmative relief, not directly connected with the actual administration by the court of the property which had come into its possession to be disposed of according to its judgment. I wish to call attention to the exact nature of the proceeding that resulted in the judgment which is the foundation of this action.

The action was commenced by creditors of a firm of Munzesheimer & Daube, a copartnership doing business in the Indian Territory as then constituted, who had made an assignment for the benefit of creditors to set aside the assignment and to have the property of the copartnership administered by the court for the benefit of the creditors of the assignors. The defendant in this action was one of the plaintiffs in that action, and joined with other creditors in asking the court to set aside the assignment, take possession of the property assigned,

and distribute it according to law among the creditors of the assignor. The plaintiffs in that action appeared by three attorneys, S. T. Bledsoe, Crawford & Crawford, and Potter & Potter, and the bill of complaint in equity was verified by Bledsoe, one of the attorneys who, in his affidavit of verification, stated that he was attorney for all the creditors named as the plaintiffs, except H. B. Claflin & Co. Upon filing this complaint, the assignors and assignee who were parties defendant appeared in the action, and substantially admitted the allegations of the complaint. Whereupon, on the application of the plaintiffs in that action, including the defendant in this action, the court on December 8, 1896, entered an interlocutory order or judgment, appointing one W. A. Ledbetter, who had been the assignee of the property of the debtors, receiver of all of the assigned property conveyed to him as such assignee. This interlocutory order or judgment directed the receiver to take possession of the property of the debtors for the benefit of the creditors named in the deed of assignment, to reduce the same to possession, to sell the stock of merchandise transferred and conveyed to him as assignee, to sell the real estate conveyed to him by the deed of assignment, and to collect all the notes, accounts, choses in action and evidences of debt; and, in pursuance of this interlocutory order or judgment, the receiver took possession of all the property of the debtors that had been assigned to him and proceeded to administer the estate. On the 24th day of February, 1897, an order was entered reciting that it appeared that the receiver had sold and disposed of all the property and effects in his hands as such receiver belonging to the estate of Munzesheimer & Daube, and that he had then in his hands funds which ought to be distributed among the creditors of the estate of Munzesheimer & Daube; and the said receiver was ordered and directed to file in court a full and complete report and statement exhibiting his dealings with the said estate, and referring it to a Master in Chancery to examine the report, and further ordering the said receiver to disburse among the creditors of said estate all funds in his hands as such receiver, according to the terms of the deed of assignment, the receiver to reserve sufficient funds in his hands to pay the commission to which he was entitled, and all other expenses incurred in the management and control of the said estate as assignee and receiver. Acting under this order, the receiver paid to the defendant who was one of the plaintiffs in that action on the 13th day of April, 1897, the sum of $3,304.-50, and on the 14th day of May, 1897, paid a further sum of $3,-304.50. On the 31st day of July, 1899, Ledbetter, as such receiver, also being a defendant in that action, filed what is called a "cross-bill," alleging that this defendant, one of the plaintiffs in that action, had made a proof of claim as a creditor of the assignors, based upon certain promissory notes of the assignors which were recited in the proof of claim; that in said proof of claim it was alleged that no payment had been made on any of these notes, and that the defendant did not hold any collateral, or other security to secure either one or all of them; that proof of claim was verified by the defendant in the city of New York on the 20th of February, 1897;

that this proof of claim was false; that the defendant held as collateral security for the indebtedness of the assignors certain notes aggregating $16,731.71; that these notes were good, and that the collateral pledged with the defendant to secure the assignor's notes exceeded in actual cash value the sum of $16,736.71, and that this defendant had collected a large amount upon these collaterals; that the defendant held as additional collateral for the indebtedness mortgages upon certain real estate, situated in the city of New York, so that this defendant was amply secured as to all the indebtedness of the assignors to him, and was not entitled to receive any portion of the money in the hands of the court in payment of the indebtedness of the assignors, and this cross-bill prayed that the petitioner be permitted to appropriate the $1,750 in his possession belonging to the defendant in part satisfaction and reimbursement of the sum of $6,609 so wrongfully and fraudulently collected by the defendant from the receiver; and, further, that the receiver have judgment against the defendant in this action, the plaintiff in the action then before the court, for the money paid by the petitioner (the receiver), in order that he might restore the same to the trust funds in his hands and pay it to the persons entitled thereto under the order of the court; and that the said K. Mandell & Co. be directed and required to refund to the petitioner the funds aforesaid. This cross-bill having been filed, on September 5, 1899, Bledsoe, who was the attorney for the defendant in this action as the plaintiff in that action, intervened, and alleged that the sum of $1,750 which the cross-bill sought to impound and apply on account of the money claimed to be due by the defendant in this action to the receiver was money collected by the said receiver and Bledsoe, who were partners as attorneys in the practice of the law, and he prays that in case this sum is held by the receiver to be subject to the payment of the sum claimed by the receiver in his cross-bill filed against K. Mandell & Co. he (Bledsoe) be by the decree of the court protected and discharged from liability to the said K. Mandell & Co. on account of said sum so collected by him and the said Ledbetter as attorneys of the said K. Mandell & Co. This intervention was filed in open court on June 5, 1900. On the same day an order or judgment of the court was duly filed reciting Bledsoe's intervention; that the action had come on to be heard on the amended cross-bill of Ledbetter, as assignee and receiver, filed on the 5th of September, 1899, against K. Mandell doing business under the trade-name of K. Mandell & Co., one of the plaintiffs in that action; that the clerk of the court, through mistake and inadvertence and without any order of the court to that effect, but on account of a confusion of the number of the case with the numbers of a list of cases, which had been ordered stricken from the docket, wrote opposite this case on the minutes of the court the word "Dismissed"; it was ordered that the said entry be, and the same was, thereby annulled, held for naught, and expunged from the minutes of the court, and it having appeared to the court that the said K. Mandell has been personally served with a copy of the original cross-bill of the said W. A. Led-

better, and had had ample time and notice to appear and make an-
swer unto the same, and has failed to do so, the court was then
of the opinion that the material allegations of said cross-bill as
amended should be, and the same were, taken for confessed as against
the said K. Mandell, and it was ordered and decreed that the said
W. A. Ledbetter, as receiver of the property and effects of the said
Munzesheimer & Daube, in the custody of the court, in that cause
do have and recover of and from the said K. Mandell, the sum of
$7,792, which he was directed to distribute and pay out to the par-
ties entitled thereto under the orders of the court in that cause. It
was "further ordered and decreed that the said Ledbetter retain and
appropriate to the payment and satisfaction of said sum so adjudged
in his favor against the said K. Mandell, as far as it will go, the
sum of one thousand seven hundred and fifty dollars, in his hands
the property of the said K. Mandell, * * * and, further, that
execution for the difference between the sum adjudged as aforesaid
to the said Ledbetter, receiver, and the sum of one thousand seven
hundred and fifty-five dollars, now in his hands, and all proper and
necessary process issue in favor of the said Ledbetter, receiver, for
the enforcement of this decree."

This decree recites the service upon the defendant Mandell of a
copy of the cross-bill. Bledsoe, Mandell's attorney in the action and
who had appeared for him and instituted the suit on his behalf, was
before the court, and was heard upon the granting of this decree.
Service upon him as attorney for Mandell would have been proper
service to bring Mandell before the court for the action had never
been finally determined. No final decree, so far as appears, had ever
been entered. The court was still engaged in administering the es-
tate. We must assume that the court had judisdiction of the sub-
ject-matter of the action; that it had under its general equity pow-
ers intervened for the protection of the plaintiffs in that action
which included the defendant in this action and had undertaken to
distribute the estate of the debtors among their creditors. Mandell,
the defendant in this action, had been an active intervener, asking
for the intervention of the court, for the proper distribution of the
property within the jurisdiction of the court among the creditors
of Munzesheimer & Daube. The court had intervened, reduced the
property of the debtors to possession, and had decreed that this
property be distributed among the creditors, and the court was still
conducting the proceeding for the purpose of making a proper dis-
tribution of the assets and property of the debtors. In the course
of such administration it appeared that this defendant, one of the
plaintiffs in that action, had obtained from the receiver a sum of
money to which he was not entitled and which really belonged, un-
der the order of the court, to other creditors.

Upon these facts being presented to the court by its receiver, it
seems to me that the court had complete jurisdiction to decree the
repayment by a party to the action of a sum of money which he had
received from the receivers in excess of what he was entitled to, and
that notice to or the appearance of the attorney who had appeared

for such party in the action was sufficient notice to the defendant, and made the order or judgment, whatever it may be called, binding upon the defendant. Every fact it seems to me existed which was necessary to give the court jurisdiction. The plaintiff in the action then before the court appeared by an attorney asking for the intervention of the court to endeavor to procure for him payment of his claim against these assignors who resided in the jurisdiction in which the court was administering justice. The intervention of the court by which it had undertaken to administer the estate of the assignors, the receipt by an officer of the court of the property of the assignors for distribution among its creditors, the payment of a portion of the money by the officer of the court to one of the plaintiffs in the action before the court to which that plaintiff was not entitled, the appearance before the court of the attorney who had appeared for the plaintiff, and a final determination by the court that the plaintiff who had received a sum of money from its receiver should repay that money to the receiver, and a formal legal judgment to that effect, duly entered, bound a person against whom the judgment was directed, and the courts of this state are required to give full faith and credit to that order or judgment and enforce it.

It is suggested that Bledsoe, this present defendant's attorney, did not properly protect his client's interest and apparently intervened individually so as to be protected as against his client in any judgment that the court render in relation to the proceeding; but, if that is so, this defendant has a remedy against his attorney who failed to protect him. It cannot affect the jurisdiction of the court who had the parties and their attorneys before it and who were required to prevent a misapplication of the funds in court which were applicable to the payment of certain claims presented to the court and which the court was engaged in administering.

I think, therefore, that this judgment, until reversed or vacated, was an adjudication which bound the defendant, and the courts of this state are bound to enforce it.

I think that the judgment should be reversed.

McLAUGHLIN, J., concurs.